```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA                                          :
                                                                  :
    - v. -                                                        :
                                                                  :
JONATHAN SAEZ,                                                    :
                                                                  :
                              Defendant.                          :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 7, 2017

16 Cr. 317 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, United States District Judge:

On January 17, 2017, Jonathan Saez ("defendant") pled guilty to having committed two crimes: participating in a conspiracy to distribute crack and brandishing a firearm in connection therewith. (ECF No. 290.) On May 5, 2017, the Court commenced a sentencing proceeding. (ECF No. 436.) During that proceeding, defendant raised a number of disputes regarding factual statements in the Presentence Investigation Report ("PSR"). (ECF No. 390.) All of those disputes were addressed and resolved save one series: each of paragraphs 30, 31 and 32 contain references and a description of defendant's involvement in a gang-related shooting on May 20, 2013. (Id. ¶ 30-32.)

In substance, these paragraphs of the PSR collectively state that following a dispute with a rival gang, two members of the Low Rider Brims—a gang of which defendant is a member—called defendant and requested that he "obtain a firearm to retaliate." (Id.) Shortly thereafter, defendant and a fourth individual (also a member of the Low Rider Brims) appeared on the scene and a shooting occurred. At

1

the sentencing proceeding, defendant disputed that he had any involvement in responding or bringing a gun to the scene that day. (Tr. of Sentencing Hr'g ("Sentencing Tr.") 10-11, May 5, 2017, ECF No. 436.) The Court informed the parties that it deemed resolution of defendant's involvement important to its sentencing decision. As the Court stated, "if it turn[s] out that Mr. Saez just happened to be there and the shooting occurs, it's a very different situation than him being the guy that gets called to come down and help them enforce the situation on the street." (Id. at 11.)

After receiving a proffer from the Government as to the evidence it would offer in support of the statements in the PSR, the Court asked the defendant if he maintained his position; he (through counsel) responded in the affirmative.[1] (Sentencing Tr. at 14-15.) The Court then set a date for a Fatico hearing.[2] (ECF No. 490.) At the hearing, the Government presented testimony from two cooperating witnesses, Joseph Otero and Demetrius Flowers, and six exhibits. One of the exhibits was a surveillance video of location where the shooting took place.

---

[1] At the conclusion of the sentencing proceeding on May 5, 2017, the Court encouraged the parties to consider whether a stipulation as to some characterization of the issue could be reached. (Sentencing Tr. at 25.) The Court indicated that there are always certain risks with having a Fatico—because the Court typically learns additional information as to the defendant and the depth of involvement that would not otherwise be before it. As the Court stated, if the testimony proffered by the Government is credible, "then hearing the story in all of its gory details doesn't usually make things better" for the defendant. (Id.) That is not to say, of course, that a good-faith dispute of fact should not be pursued; it is of course the defendant's right to do so.

[2] A Fatico hearing is a pre-sentence evidentiary hearing during which parties are permitted to present evidence and arguments on disputed factual matters relevant to sentencing. See United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979). "Fact-finding at sentencing is made by a preponderance of the evidence." See United States v. Bellomo, 176 F.3d 580, 595 (2d Cir. 1999) (citing United States v. Ruggiero, 100 F.3d 284, 290-91 (2d Cir. 1996)). Furthermore, the sentencing court may consider hearsay evidence "if the evidence is of sufficient reliability." See United States v. Martinucci, 561 F.3d 533, 535 (2d Cir. 2009) (citing United States v. Martinez, 413 F.3d 239, 242 (2d Cir. 2005).

2

(ECF No. 490); (GX 1). The defendant called his close personal friend, Terrell Smith, as an alibi witness.

At the conclusion of the hearing, the Court informed the parties that not only was it persuaded that the factual statements in the PSR were correct, but it was further persuaded that the defendant was the shooter. (Tr. of Evid. Hr'g ("Tr.") 109-11, Aug. 1, 2017, ECF No. 490.) The Court invited further submissions on the previously disputed issues as well as the question of whether the defendant had himself been the shooter. (Tr. 111-12.) Additional submissions were received on August 10, August 28, and September 1, 2017. (ECF Nos. 494, 495, 509, 516.)

I. DISCUSSION

As previewed above, based on this Court's evaluation of testimony, the exhibits, and the surveillance video, it finds: (1) that defendant received a call from members of the Low Rider Brims on May 20, 2013; (2) that he responded to that call by coming down to the scene armed with a loaded firearm; and (3) that he then proceeded to discharge that firearm at a member of a rival gang.

The Government's first witness was Joseph Otero, a member of the Murder More Gangsters ("MMG") gang and the victim of the shooting.[3] Otero testified credibly that on the day of the shooting, he pulled a kitchen knife on Eladio Padilla (a/k/a "Nino") and Joseph Smith (a/k/a "Joe Lite"), two members of a rival gang (the Low Rider Brims). (Tr. 17-18.) After some discussion, Nino and Joe Lite walked away. (Tr. 18-19.) This testimony is consistent with the version of events given by

---

[3] The Court found Otero credible. He answered questions posed to him in a forthright and clear manner; he did not seek to assist one side or the other; and he had little motive to lie as he has already been sentenced and served a period of incarceration.

3

Demetrius Flowers, the leader of the Bronx-area Low Rider Brims. (Tr. 41-42.)[4] During a jailhouse conversation, the defendant told Flowers that on the night of the incident, Nino had called him and told him that Otero had pulled a knife on them and that when he heard this, he (defendant) grabbed a gun and went to join them. (Tr. 66.) This sequence of events is consistent with Otero's testimony about what happened next.

According to Otero, several individuals, including Nino and Joe Lite, confronted him across the street from the Family Dollar store. (Tr. 19-20.) Apparently unbeknownst to any of the participants, there was video surveillance of one angle of the sidewalk in front of the dollar store. Otero testified credibly and consistently that one of the men was wearing a hoodie. (Tr. 21.) Since it was summertime, this fact stood out to Otero.[5] (Tr. 21.) The surveillance video (and there is no evidence that Otero ever saw this video), clearly shows one man in the group, but only one, wearing a hoodie. (GX 1.)

---

[4] Flowers had not been on the scene on May 20, 2013, but after his arrest in this case, he was incarcerated in the same unit as the defendant. (Tr. 55-56.) On one occasion, he and the defendant were both reviewing discovery material and the defendant made statements to Flowers. (Tr. 56-58.) These jailhouse statements form the basis of Flowers's testimony at the <u>Fatico</u>. The Court found Flowers credible. Indeed, it appeared from statements made by members of the audience (some of whom caused disruptions at certain times), that they found Flowers credible as well. One audience member audibly referred to Flowers as a "snitch". (ECF No. 516 at 1.) Flowers answered questions in a straightforward and unexaggerated manner. He did not appear to be trying to help the Government, nor was he fighting questions posed on cross-examination by the defense. When he did not know a fact, he so stated.

[5] Otero testified that the individual was wearing a "black hoodie." (Tr. 23.) Based on a review of the video, it appears as though the only person wearing a hoodie was wearing a red hoodie. (GX 1.) As such, it appears as though Otero misremembered the color of the hoodie. The Court dos not find this difference particularly troubling.

4

When the group approached him, Otero called Joe Lite a "pussy." (Tr. 21.) Immediately afterwards, the man in the hoodie "pulled out a gun" and fired multiple times in Otero's direction. (Tr. 21-22.) Otero ducked and was not hit. The surveillance video shows the man in the hoodie reaching into a black bag immediately before the shooting. (GX 1.)

After being shown the surveillance video, Flowers identified the man in the hoodie as the defendant. (Tr. 62-63.) Flowers further testified that, after the shooting, the defendant told him he had been carrying a pistol in a black bag. (Tr. 67.) That testimony is consistent with both (1) Otero's testimony that the man in the hoodie had fired the shots, and (2) the surveillance video, which shows the man in the hoodie reaching into a black bag.

The Court concludes that the testimony of Otero and Flowers, combined with the surveillance video, paints a clear picture of the defendant's involvement in the shooting.[6] Not only was the defendant present at the time of the shooting, the Court additionally concludes that he was the shooter. It follows from this that the Court finds no error in paragraph 32 of the PSR.[7]

The defendant called a close personal friend, Terrell Smith ("Smith"), as an alibi witness. In sum, Smith testified that the defendant could not have been

---

[6] Notably, Otero and Flowers are members of rival gangs, and have never spoken to each other regarding the events of May 20, 2013. The fact that their individual testimony is consistent both with each other and the surveillance video lends credibility to each.

[7] Defendant argues that a determination that the defendant was the shooter is incompatible with the Government's prior representation that it could not identify the shooter. (ECF No. 509.) The Court finds no incompatibility. The factual record on this issue has now been developed through the crucible of the adversarial process. The testimony and video evidence amply support this Court's conclusions. It goes without saying that had the Government asserted a discharge and attempted to pursue such a claim at trial, its burden would have been far higher—beyond a reasonable doubt. In the context of a <u>Fatico</u>, as stated, this Court's findings are by a preponderance of the evidence.

present at the shooting on May 20, 2013 because he was playing basketball with Smith the entire day, and he was not present at the shooting. The Court does not credit any of Smith's testimony. First, Smith lacked even a basic modicum of credibility. He was evasive with his answers and appeared to be trying hard to say what he thought would affirmatively help the defendant, rather than hewing closely to the truth.[8] Smith testified that on the day of the shooting, he played basketball with the defendant for virtually the entire day. (Tr. 86-87.) He testified further that he was with the defendant at the time the events occurred, and that he and the defendant were wearing basketball shorts (and they never changed from those shorts). (Tr. 87-89.) The surveillance video is inconsistent with Smith's testimony. The video clearly shows that the defendant was wearing a hoodie and jeans, not basketball shorts. (GX 1.) Smith even identifies the defendant as the individual wearing the hoodie. The video also fails to show Smith, who claimed that he had walked with the defendant past the Family Dollar store. (Tr. 104-5.) Finally, Smith testified that "[n]othing happened" on May 20, 2013 outside the Family Dollar (Tr. 91), but it is uncontested that a shooting occurred at that location by someone. The Court finds that Smith was not with the defendant at or near the time of the shooting.

Taken together, the evidence fully supports that following an initial altercation on the street, members of the Low Rider Brims telephoned the defendant and requested his assistance; the defendant came to the scene carrying a

---

[8] Smith is a close personal friend of the defendant. However, despite having known him for years, he disclaimed knowing that the defendant—who has pled guilty to drug dealing—ever dealt drugs. (Tr. 100.)

6

loaded firearm in a bag; the defendant then discharged the firearm at Otero. These facts are relevant to the Court's analysis as to an appropriate sentence for Saez pursuant to 18 U.S.C. 3553(a).

Issues the parties have raised regarding acceptance of responsibility credit shall be addressed at the continued sentencing proceedings.

SO ORDERED:

Dated:     New York, New York
            September 7, 2017

_____
       KATHERINE B. FORREST
        United States District Judge