UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JONATHAN SAEZ,

                                        Defendant.

---

16 Cr. 317-6 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Jonathan Saez seeking his release

from Federal Correctional Institution ("FCI") Berlin pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),

in light of the risk that the COVID-19 pandemic presents to his health.  *See* Dkt. 668 ("Def. Mot.");

Dkt. 689 ("Def. Mem.").  The Government opposes his request.  *See* Dkt. 694 ("Gov't Mem.").

For the reasons that follow, the Court denies Saez's application.

Between 2010 and 2016, Saez was involved in a drug-trafficking scheme in the Diego

Beekman Houses in the Bronx, selling crack cocaine and marijuana as a street-level dealer.

Gov't Mem. at 2; Dkt. 390 ("PSR") ¶ 2.  He was also a member of the Low Rider Brims gang,

which frequently had violent conflicts with other street gangs  PSR ¶¶ 10–19.  On May 20, 2013,

in one such conflict, other members of the Low Rider Brims got into an altercation with

members of a rival gang, and one of those members called Saez "to obtain a firearm to retaliate."

*Id.* ¶ 32.  As Judge Forrest, then assigned to this case, found after a *Fatico* hearing, Saez

responded to that call by coming to the scene with a loaded firearm and shooting at a member of

the rival gang.  *See* Dkt. 519 ("*Fatico* Decision") at 3, 5–6; *see also* Dkt. 543 ("Sent. Tr.")

at 26–27.

On January 17, 2017, Saez pled guilty to one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, and one count of possession and brandishing of a firearm in furtherance of that conspiracy, in violation of 18 U.S.C. § 924(c). *See* Gov't Mem. at 2. The latter count carried a mandatory minimum sentence of 84 months' imprisonment. *Id.*; *see* PSR ¶ 7(f). On May 5, 2017, Judge Forrest held a sentencing hearing at which the defense objected to several aspects of the PSR, including the factual finding that Saez had participated in the May 2013 shooting discussed above. Dkt. 436 at 6–15. In light of that factual dispute, Judge Forrest held a *Fatico* hearing, after which she found that Saez, in fact, had not only been present at the shooting (as described in the PSR), but was the shooter. *See Fatico* Decision at 3, 5–6. On September 8, 2017, Judge Forrest sentenced Saez to 83 months' imprisonment for the narcotics conspiracy and 88 months' imprisonment for the firearms count, to run consecutively. *See* Sent. Tr. at 28–29. Although the sentence for the firearms count was four months above the 84-month mandatory minimum, Saez's overall 171-month sentence fell below the Guidelines range of 176 to 199 months' imprisonment. *See id.* at 16, 28–29. Saez has been incarcerated since his arrest in August 2016, and so has served approximately 56 months of his stated sentence. *See* Gov't Mem. at 2. His expected release date is December 2, 2028. *See id.* at 5. He has thus served about 33% of his 171-month stated sentence, or about 38% of his expected sentence.

On January 29, 2021, the Court received a *pro se* motion from Saez seeking early release in light of the COVID-19 pandemic. Def. Mot. On March 15, 2021, Saez's counsel filed a supplemental memorandum in support of that motion, arguing that Saez's medical conditions and rehabilitation support a reduction in sentence to time served. Def. Mem. at 1–3. On March

22, 2021, the Government opposed that request, arguing that Saez's release at this time would conflict with the sentencing factors set forth in 18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3582(c)(1)(A), a court

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c).  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020).  But with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts.  *Ebbers*, 432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances sufficiently extraordinary and compelling to justify a sentence reduction.  *Id.* at 427 (citing 28 U.S.C. § 994(t)).  The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary.  That guidance, *inter alia*, (1) sets out circumstances that

3

present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without BOP intervention. Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

4

Here, the Government concedes that Saez's medical conditions—including his obesity and hypertension—present extraordinary and compelling reasons for release under § 3582(c). Gov't Mem. at 9.  The Court agrees with that assessment.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[1]  In that respect, COVID-19 poses a heightened health risk to all inmates.  And a high-risk inmate like Saez who contracts the virus while in prison will, in all likelihood, face challenges in caring for himself.  Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what could have been expected at sentencing.  For these reasons, in the past months, various courts, including this one, have ordered the temporary

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

release of inmates held in pretrial or presentencing custody[2] and the compassionate release of high-risk inmates serving federal sentences.[3]

The presence of extraordinary and compelling reasons for early release, however, is only a threshold prerequisite for granting such release. The Court must also assure itself that release accords with "the factors set forth in section 3553(a) to the extent that they are applicable" before doing so. 18 U.S.C. § 3852(c)(1)(A). Here, the Court finds, these factors are inconsistent with the reduction of Saez's sentence by approximately two-thirds, as he requests.

To be sure, the possibility that Saez might contract COVID-19 in prison lends greater weight to two of the § 3553(a) factors than could have been expected at the time of sentencing: the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(D). That is especially so given Saez's heightened vulnerability to severe COVID-19.

---

[2] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense).

[3] *See, e.g.*, *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to defendant with medical conditions putting him at heightened risk of severe COVID-19 and who had served 75% of effective sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma who had served nine years of his 10-year sentence); *United States v. Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (same for defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 154–56 (S.D.N.Y. 2020) (same for elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy).

But even so, the Court cannot find that a sentence reduction on the order that Saez

now seeks would result in a sentence commensurate with the other § 3553(a) factors, including

the need for the sentence imposed to reflect just punishment, protect the public, and provide

specific deterrence.  As Judge Forrest remarked at sentencing, Saez's conduct—which involved

substantial drug dealing and gang-related violence—was "extremely destructive."  Sent. Tr.

at 25–26.  His drug dealing was "persistent," leading Judge Forrest to conclude that substantial

consecutive sentences were necessary to further the interest in specific deterrence.  *See id.* at 28

("I don't have a level of confidence that, here, you would not return to" "consistent drug

dealing").  And "based upon [her] knowledge of the other defendants in this case," she

concluded that Saez was "among the most culpable."  *Id.*  Specifically, Saez's willingness to

carry, brandish, and discharge a firearm in furtherance of his gang's enterprise led her to

conclude that, as to the firearms count, a sentence above the mandatory minimum was necessary.

*See id.*  Granting Saez compassionate release at this point would result in a sentence substantially

below even that 84-month mandatory minimum.  The Court cannot conclude that a sentence

roughly one-third of that which Judge Forrest found to be the lowest reasonable one in 2017

accords with the important interests undergirding the § 3553(a) factors.

Saez's circumstances thus contrast with those of various sentenced defendants whose

release the Court *has* ordered in recent months pursuant to § 3582(c), who had generally served

far greater proportions of their sentences than Saez has here.  *See, e.g.*, *United States v. Ciprian*,

No. 11 Cr. 1032 (PAE), Dkt. 2581 at 2, 7–9 (S.D.N.Y. Feb. 1, 2021) (granting compassionate

release for defendant who had served 98 months of 120-month sentence); *Lizardi*, No. 11 Cr. 1032

(PAE), Dkt. 2523 at 2 (same for defendant who had served nearly 93 months of his 121-month

sentence, and was expected to be released to a halfway house in five months); *Benjamin*, No. 15

Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for defendant with asthma and who had served nine years of his 10-year sentence); *Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (same for co-defendant of Saez's who had served over half of his stated sentence and nearly two-thirds of his actual sentence); *United States v. Knox*, No. 15 Cr. 445 (PAE), 2020 WL 1673140, at *1–2 (S.D.N.Y. Apr. 6, 2020) (same for defendant who had served all but seven months of an 88-month sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months).

As a result, even crediting Saez's representation that he has used his time in prison productively, *see* Def. Mem. at 3, for which the Court commends him, a reduction of his sentence to time served, at this point, would substantially disserve the § 3553(a) factors, viewed holistically. In so finding, the Court does not rule out that a later motion for early release under § 3582(c), made considerably deeper into Saez's sentence, and therefore resulting in a much lesser reduction of sentence, could be compatible with § 3553(a). Saez's various health conditions (in light of COVID-19) and the substantial, and unexpected, rigors of incarceration during the pandemic, even if insufficient to justify a grant of compassionate release today, may justify a somewhat earlier release than his present sentence contemplates. The Court's ruling today therefore is without prejudice to Saez's right to move again under § 3582(c) for compassionate release at a later point, substantially further into his term of imprisonment.

Accordingly, despite the extraordinary and compelling circumstances presented by the COVID-19 pandemic—and the special danger they pose to Saez—at this time, the § 3553(a) factors are not compatible with the reduction of sentence sought. The Court therefore denies Saez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 5, 2021
       New York, New York