UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JONATHAN SAEZ,

Defendant.

---

16 Cr. 317 (PAE)

OPINION AND ORDER

PAUL A. ENGELMAYER, District Judge:

On April 5, 2021, the Court denied an application from defendant Jonathan Saez, seeking compassionate release from Federal Correctional Institution ("FCI") Berlin pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 699 ("CR Dec'n"). On January 2, 2024, the Court received a new *pro se* application from Saez, seeking the same relief. Dkt. 789 ("Mtn."). The Government opposes the application. Dkt. 795 ("Opp."). For the reasons that follow, the Court denies the application.

### I. Background

The Court assumes familiarity with the background of this case. In brief, on January 17, 2017, Saez pled guilty to one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 841(b)(1)(C) and § 846, and one count of possessing and brandishing a firearm in furtherance of that conspiracy. Dkt. 390 ("PSR") ¶ 6. On September 8, 2017, after a *Fatico* hearing that established, *inter alia*, that Saez, a member of the Low Rider Brims gang, had retaliatorily fired a gun at members of a rival gang, Judge Forrest, to whom this case was then assigned, imposed an aggregate sentence of 171 months' imprisonment, below the Guidelines range of 176 to 199 months' imprisonment. *See* Dkt. 519 ("*Fatico* Decision") at 5–6; Dkt. 543 ("Sent. Tr.") at 16, 29.

On January 29, 2021, Saez moved for compassionate release, based predominantly on the COVID-19 pandemic, and on his claim of rehabilitation. Dkt 668. In denying that motion, the Court found, as the Government had conceded, that Saez's medical conditions, which included obesity and hypertension, then presented extraordinary and compelling reasons for release under § 3582(c). CR Dec'n at 5. The Court noted the dire state of the pandemic, the outsized risk of contagion in a federal prison, and the heightened danger of contracting COVID-19 faced by Saez as a high-risk inmate. *See id.* at 5–6. However, the Court found, the § 3553(a) factors, viewed together, were inconsistent with Saez's application for release approximately one-third of the way through his prison term. *Id.* at 6. Saez's drug-dealing and gang-related violence, as described by Judge Forrest at sentencing, had been "extremely destructive"; he had been among the most culpable defendants in the case; and there was a strong need for the sentence to serve as a specific deterrent. *Id.* at 6–7 (citations omitted). Even crediting that Saez had used his time in prison productively, the Court found that reducing Saez's sentence to time-served would disserve the § 3353(a) factors, viewed holistically. *Id.* at 8. The Court, however, stated that its ruling was without prejudice to Saez's right to move again under § 3582(c) for release "substantially further into his term of imprisonment," including based on the interplay between his health conditions and COVID-19 and the "substantial, and unexpected, rigors of incarceration during the pandemic." *Id.* at 8.

Saez's renewed motion for release, in the form of a 1 ½-page letter, emphasizes the Court's invitation to Saez to pursue compassionate release later in his prison term. Mtn. at 1. Saez writes: "I have now served roughly 2/3 of my sentence. I continue to program, rehabilitate, and have focused more on being an involved father with my daughters of 13 and 9 years old, and focused on myself in doing so." *Id.* Saez notes that he has completed multiple prison programs,

has secured employment in the prison's recreation department, and is pursuing vocational training. *Id.* at 2. The Government's opposition identifies Saez's anticipated release date as April 17, 2029, *see* Opp. at 2, and corroborates Saez's claim to have completed a number of educational or vocational programs in prison, *see* Opp., Ex A. It also chronicles Saez's numerous disciplinary infractions between his initial incarceration and summer 2022, which include assault, possession of a dangerous weapon, failure to obey orders, and destruction of evidence. *See id.*, Ex. B.

## II. Discussion

The Court first reviews the legal standards governing compassionate release motions, and then applies them to Saez's motion.

### A. Standards Governing Compassionate Release Motions

Upon the motion of a defendant who has "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce the defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). To grant such a motion, the Court must find that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the § 3553(a) factors weigh in favor of a reduction in sentence. *Id.*; *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (recognizing that both "extraordinary and compelling reasons" and support of the § 3553(a) factors are necessary to grant relief).

"Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release . . .

3

and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (cleaned up) (citation omitted). The defendant bears the burden of proving that he is entitled to compassionate release. *See United States v. Earlsey*, 568 F. Supp. 3d 298, 301 (W.D.N.Y. 2021).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). But, as part of the First Step Act of 2018, Congress authorized courts to reduce a prison term upon a defendant's motion. *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam). Congress had tasked the Sentencing Commission with identifying the circumstances that are extraordinary and compelling so as to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). Before November 1, 2023, the Commission's only guidance on this point had been promulgated before the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), not motions brought by defendants, prompting the Second Circuit to hold in 2020 that the Commission's guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in cases involving motions by defendants, *Brooker*, 976 F.3d at 236 at 236. As a result, through November 1, 2023, a court assessing a defendant's motion was unconstrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, the Commission has amended the Guidelines to also cover defendant-initiated petitions. *See* U.S. Sent'g Comm'n, Amendments to the Sentencing

4

Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The Commission's amended guidance as to what constitutes extraordinary and compelling reasons now controls a court's analysis of a defendant- or BOP-initiated petition for compassionate release.

The Commission's amended guidance identifies six circumstances that, singly or in combination, may so qualify. One is potentially germane to Saez's application.[1]

This circumstance relates to a defendant's medical circumstances. *See* U.S.S.G. § 1B1.13(b)(1). It identifies the following four circumstances as supplying "extraordinary and compelling reasons" for release:

(A)   The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)   The defendant is—

    (i)   suffering from a serious physical or medical condition,

    (ii)  suffering from a serious functional or cognitive impairment, or

    (iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[1] The remaining circumstances relate to a defendant's age, U.S.S.G. § 1B1.13(b)(2); family circumstances, *id.* § 1B1.13(b)(3); status as a victim of abuse in custody, *id.* § 1B1.13(b)(4); and unusually long sentence, of which at least 10 years has been served, coupled with a change in the law that would create a gross disparity between the sentence previously imposed and the sentence likely to be imposed at the time of the motion, *id.* § 1B1.13(b)(6). The Commission has also held that such reasons exist where "[t]he defendant presents any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above. *Id.* § 1B1.13(b)(5).

5

    (C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    (D)    The defendant presents the following circumstances—

        (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        (iii)    such risk cannot be adequately mitigated in a timely manner.[2]

U.S.S.G. § 1B1.13(b)(1).

The Commission's guidance, tracking the statute, requires that, even where extraordinary and compelling reasons are found, the Court must also assure itself that release is consistent with the § 3553(a) factors "to the extent that they are applicable." *See* U.S.S.G. 1B1.13(a) (citing 18 U.S.C. § 3582(c)(1)(A)). The Court must also find that the defendant is not "a danger to the safety of any other person or to the community," *id.*, § 1B1.13(a)(2), as defined in the Bail Reform Act, 18 U.S.C. § 3142(g).

### B. Application to Saez's Motion

The Court commends Saez on his concerted efforts towards self-improvement while in prison. However, the Court must deny Saez's renewed application because Saez has not shown "extraordinary and compelling reasons" warranting a reduction in sentence, as required by

---

[2] Factor (D) was informed by compassionate release decisions arising from the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

6

§ 3582(c)(1)(A). At the time of Saez's original application in early 2021, the risk that COVID-19 presented to him, as a high-risk inmate, established that prerequisite. In early 2021, vaccines for COVID-19 had just become available; they were only beginning to become available to federal inmates; and there was no showing that the vaccine had been offered to Saez. *See* Dkt. 694 at 8. Recognizing the risk that COVID-19 presented to Saez, the Court treated Saez as akin to the many high-risk inmates who, prior to the availability of vaccines, it and other courts had found to have established extraordinary and compelling reasons for release. *See* CR Dec'n at 5–6 (citations omitted).

Today, however, three years after Saez's initial application, that assessment no longer holds true. Vaccines are widely available in federal prisons. They have been proven efficacious in reducing the risk of death or gravely serious medical outcomes. The reports of deaths or grave illnesses in prison due to COVID-19 that were common in 2020 and early 2021 are common no more. For this reason, many courts, including this one, have held that the fact of vaccination— or, for inmates who rejected the vaccine, the availability of vaccines—undermines an inmate's claim that COVID-19 presents extraordinary and compelling reasons for early release. *See United States v. Rodriguez*, No. 15 Cr. 445-2 (PAE), 2023 WL 3225021, at *3 (S.D.N.Y. May 3, 2023) (defendant's vaccination status supported not finding extraordinary and compelling circumstances sufficient to justify sentence reduction); *United States v. Malloy*, No. 07 Cr. 898 (VM), 2023 WL 2237504, at *3 (S.D.N.Y. Feb. 27, 2023) (defendant's vaccination status weighed against a sentence reduction because of a lower risk of contracting COVID-19); *United States v. Gonzalez*, No. 19 Cr. 467 (PKC), 2022 WL 16919842, at *3 (S.D.N.Y. Nov. 14, 2022) (fact that defendant received the vaccine and booster weighed against granting compassionate release motion).

Saez's present application for compassionate release has not established that his medical conditions currently present a compelling basis for early release. It does not even chronicle his current medical conditions or otherwise engage with the threshold requirement that extraordinary and compelling reasons for early release be shown. It instead, errantly, treats the Court's finding of extraordinary and compelling circumstances as of early 2021 as durable, notwithstanding the vastly altered health environment today with respect to COVID-19.

The Court therefore finds that Saez has not established extraordinary and compelling reasons for release.

For avoidance of doubt, the Court makes this assessment applying the amended guidance of the Sentencing Commission. *See* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). Saez's sparse submission does not establish any of the medical, *see* U.S.S.G. § 1B1.13(b)(1), or non-medical, *id.*, circumstances that may make an inmate eligible, subject to other required showings, for such relief.

On the record before the Court, this case is thus akin to the many in which courts have denied motions for compassionate release where the defendant's medical condition fell short of the governing standards, *see, e.g., United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (defendant's diabetes, hypertension, glaucoma, and enlarged prostate did not qualify), *aff'd*, No. 21-2319, 2023 WL 2375684 (2d Cir. Mar. 7, 2023), where BOP or other medical records did not substantiate the defendant's claims to be at risk of serious medical complications or death, *see, e.g., United States v. Carrasco,* 19 Cr. 475-01 (NRB), 2023 WL 375183, at *2 (S.D.N.Y. Jan. 24, 2023) (BOP's medical records did not support defendant's claims of heart problems), and/or where the defendant did not show that the BOP was incapable of attending to his medical needs, *see, e.g., United States v. Binday*, No. 12

8

Cr. 152 (CM), 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020) (the BOP "is capable of providing . . . adequate medical care, and appears to be doing so" in the defendant's case, given his detailed health records and the BOP's comprehensive treatment plan). *See also, e.g., United States v. Olivieri*, 18 Cr. 316 (PAC), 2023 WL 2366859, at *3 (S.D.N.Y. Mar. 6, 2023) (denying compassionate release where defendant did not provide sufficient records to show the severity of his gastric ulcers, dementia, coronary artery disease, and congestive heart failure that were alleviated by the "adequacy of BOP's medical care"); *United States v. Bradley*, No. 19 Cr. 632, 2023 WL 3004660, at *2 (S.D.N.Y. Apr. 19, 2023) (denying compassionate release where the BOP was able to manage defendant's diabetes, hypertension, high blood pressure, and urinary tract disorder); *United States v. Castelle*, 18 Cr. 15 (AKH), 2022 WL 4536798, at *2 (S.D.N.Y. Sept. 28, 2022) (denying compassionate release where defendant was unable to substantiate his claim of chronic kidney disease with medical proof); *United States v. Herring*, 10 Cr. 391-67 (CM), 2022 WL 633871, at *3 (S.D.N.Y. Mar. 4, 2022) (denying compassionate release where BOP medical staff was providing "appropriate care" for defendant's complications due to his obesity); *United States v. Borelli*, No. 84 Cr. 63 (LAP), 2021 WL 2228075, at *3 (S.D.N.Y. June 2, 2021) (denying compassionate release where defendant suffered from diabetes, hypertension, heart disease, and cataracts and there was "no indication that his medical conditions cannot be managed—or, for that matter, are not already well-controlled—through BOP-provided medical care"); *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying motion for compassionate release where defendant with heart and lung conditions could be "adequately treated and monitored" by the BOP); *United States v. LoCascio*, 90 Cr. 1051, 2020 WL 12719849, at *2, 6 (E.D.N.Y. July 17, 2020) (denying compassionate release where BOP was able to "manage" the defendant's chronic kidney disease, coronary artery disease, and heart

failure); *United States v. Mood*, 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying compassionate release where, despite defendant's hypertension, diabetes, and obesity, his "condition is stable and has been effectively managed by routine monitoring and medication").

The Court thus denies Saez's motion based on his failure to meet his burden to show extraordinary and compelling reasons for early release. *See, e.g.*, *Phillibert*, 557 F. Supp. 3d at 458 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)). In light of this holding, the Court does not have occasion to reach the Government's alternative arguments for denying the motion: that (1) Saez failed to exhaust his administrative remedies within the BOP before moving, Opp. at 3, and (2) the § 3553(a) factors do not warrant Saez's release, with more than five years remaining on his sentence, *id.* at 4.

## CONCLUSION

For the reasons above, the Court denies Saez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully requested to terminate the motion at Docket 789.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: January 26, 2024
New York, New York